### FULLER *v.* WESTERN & ATLANTIC RAILROAD COMPANY.

Under the evidence in this case, the grant of a nonsuit by the court was error.
JUNE 30, 1915.

Action for damages.　Before Judge Pendleton.　Fulton superior court.　January 26, 1914.

*J. R. Whitaker* and *Arnaud & Donehoo,* for plaintiff.

*Tye, Peeples & Jordan,* for defendant.

HILL, J.　Mrs. Nannie Fuller brought suit against the Western & Atlantic Railroad Company, for damages alleged to have resulted from being carried beyond the destination called for by her ticket.　She averred, that she was a passenger entitled by her ticket to transportation from Calhoun, Ga., to Bolton, Ga.; that the conductor of the train failed to stop the train at Bolton, or to call or have called that station, but carried her on to Atlanta; that the failure to stop the train or call the station of Bolton was due to the negligence of the conductor or those in charge of the train; that she was not in any way responsible for such failure or negligence; and that, by reason of being carried to Atlanta, she was forced to walk several blocks to board an electric car and go back to Bolton, and was thereby exposed to severe cold, resulting in sickness and the permanent impairment of her health, etc.

The testimony of the plaintiff tended to show that on the day named in the petition she boarded a passenger-train on the defendant's road, having a ticket entitling her to passage from Calhoun to Bolton.　She did not give the ticket to the conductor on the train between these stations.　She testified: "The conductor paid no attention to me; he did not come to me for the ticket.　He passed through the car between the time we left Calhoun and the time we reached Bolton, going straight on.　He did not stop near my seat. The train did not stop at Bolton, and the station of Bolton was not called.　I gave my ticket to the conductor when I got into Atlanta. . .　When I went down the steps I said, 'You were to put me off at Bolton,' and he said, 'Have you a ticket?'　I said, 'Yes,' and he said, 'Let me see it.'　I took it and handed it to him, and he told me to stand aside.　I stood up there about ten minutes, and after he came back he said, 'Let's go.'　He carried me to the station-room and told me to stand there. . .　He took me to the street-car.　I was then sixty-three years old."　She testified that she did not know that Bolton was a flag-station, and knew the conductor had not taken up her ticket before she reached Bolton.　There was no affirmative evidence that Bolton was a flag-station, or that the plaintiff knew it was such.

In *Chattanooga &c. R. Co.* v. *Lyon,* 89 *Ga.* 16 (3), 22 (15 S. E. 24, 15 L. R. A. 857, 32 Am. St. R. 72), it was held: "When a railroad company sells a ticket to a flag-station, at which its trains do not stop unless signalled to do so for the purpose of receiving passengers, or when there are on board passengers bound for such station, it is, ordinarily, the duty of the conductor, before reaching the station, to ascertain from a passenger holding such ticket his destination, and to stop the train there for the purpose of allowing the passenger to leave the train. This rule, under special circumstances, is subject to exceptions." And in *Central R. Co.* v. *Dorsey,* 106 *Ga.* 826, 828 (32 S. E. 873), it was said by Simmons, C. J.: "We think it is the duty of the conductor of a passenger-train, when the company has sold tickets to passengers, to go through the train and ascertain the stations at which the passengers wish to alight; but we also think that in a case like the present there is a corresponding duty upon the part of a passenger, when he sees that the conductor has failed to call for and take up his ticket and is ignorant of his presence on the train and of his destination, to notify the conductor of his presence and of his destination, especially where the ride is a short one and the passenger knows that the train will not stop at his station unless the conductor has notice that there is on board a passenger for that station. A passenger or any other person can not sit still when he sees he is about to be injured, make no attempt to avoid the injury, and rely upon recovering damages for the injury. Under the law, he must exercise reasonable and ordinary care either to prevent the injury or, after the injury has been inflicted, to abate the damages. Here the passenger wished to leave the train at a station about fifteen miles from her starting-point; the conductor failed to take up her ticket or to notice her presence; and she must have known that in a very short time her destination would be reached. There is evidence tending to show that she nevertheless made no effort to inform the conductor of her presence or of her destination. It therefore became material, in the present case, for the jury to determine whether the railroad company was entirely to blame and to be mulcted in heavy damages, or whether the plaintiff, by the exercise of ordinary care, could have avoided being carried beyond her station and the consequent injury to her."

Under the rulings in the cases cited, we think the evidence in

this case was such as to make it a question for the jury to say whether the carrier was guilty of such negligence as would entitle the plaintiff to recover, or whether the plaintiff by the use of ordinary care could have avoided being carried beyond her station and obviated the injury alleged to have resulted therefrom. We do not think that under the evidence the court could say, as a matter of law, that the plaintiff was wholly to blame for the injury which she alleges came to her as set out in the petition. The case should have been submitted to the jury and they should have been allowed to determine, under proper instructions from the court, whether the plaintiff, under the evidence, could recover.

*Judgment reversed. All the Justices concur.*